13402

MITCHELL v. FEDERAL INTERMEDIATE CREDIT BANK OF COLUMBIA *ET AL.*

(164 S. E., 136)

458

*Messrs. W. J. Thomas* and *Buist & Buist,* for appellant,.

*Messrs. H. D. Reed, Randolph Murdaugh, D. W. Robin-son, Jr.,* and *D. W. Robinson,* for respondent,

May 5, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was commenced by the plaintiff, a citizen and farmer of Beaufort County, in October, 1926, for an accounting between him and the defendants, Federal Intermediate Credit Bank of Columbia, hereinafter referred to as the bank, the South Carolina Agricultural Credit Company, hereinafter referred to as the credit company, and W. E. Richardson, for the proceeds of a crop of potatoes grown and shipped by him under an alleged agreement with the defendants, and for recovery of any balance due him, after the payment of an indebtedness evidenced by two

outstanding notes. The plaintiff alleged that the defendant Richardson, acting for and in behalf of the bank, represented to him that, in order to obtain loans from the bank at low rates of interest, it was necessary to discount them through the credit company, and "that all produce of the borrower should be sold through the Beaufort Truck Growers Co-operative Association, and that the proceeds should be assigned for the security of the defendant bank"; that, pursuant to these representations, plaintiff borrowed, in November, 1925, $6,000.00, and in January, 1926, $3,-000.00, executing in favor of the credit company two notes, aggregating $9,000.00, and two agricultural crop mortgages to secure their payment; that in the fall of 1925, and extending up to the summer of 1926, the plaintiff raised crops of vegetables upon his land, and delivered these crops, when harvested, according to the agreement, to the Co-operative Association for sale, and that when sold they netted an amount of not less than $18,000.00, and that one or more of the defendants received this sum of money belonging to him, for which they had refused to account. The bank, answering, denied that the defendant Richardson or any one else was acting as its agent in the making of the loans referred to, and alleged that "it purchased notes and mortgages of the plaintiff of the face value of Nine Thousand ($9,000.00) Dollars, purchasing same before maturity for full value, from South Carolina Agricultural Credit Company." It is agreed that the defendants credit company and Richardson never appeared in the case, are in default, and are insolvent, and for the purposes of this case can be disregarded.

After the pleadings were filed, notice of a motion to frame issues was given by the defendant bank; but, by agreement of the parties, the case was held in abeyance pending the outcome of an action which had been brought in the Federal Court, on August 1, 1926, by the bank against Mitchell to recover on the two notes, which had been transferred to it by the credit company. In that case Mitchell, who was a de-

fendant, raised a jurisdictional question, and pleaded, among other things, as a separate and complete defense to the action, the facts that constitute the basis of his claim in the case at bar, the substance of which is hereinabove set out, but he did not, by way of counterclaim, ask for any affirmative relief. The jurisdictional question was finally decided in favor of the bank in May, 1928, and the trial of the case in January, 1930, resulted in a verdict for Mitchell, the judgment being affirmed later by the Circuit Court of appeals, 46 F. (2d), 301.

After final disposition of the suit in the Federal Court, the bank gave notice to the plaintiff that on March 16, 1931, it would move the presiding Judge of the Court of Common Pleas for Beaufort County for an order requiring him to reply to the supplemental answer of the bank, which it proposed to file by leave of the Court. In its supplemental answer the bank alleged that the action brought by it against the plaintiff in the United States District Court had resulted in a verdict and judgment for the plaintiff, who was the defendant in that action, and on appeal the judgment had been affirmed; and that "this defendant pleads the said action, the verdict and judgment therein, in bar and in abatement of the further maintenance of this action by the plaintiff herein against this defendant." The plaintiff also gave notice that he would move the Court, at the same time and place, for an order permitting him to amend his complaint (1) by adding a paragraph thereto setting up the result of the action in the Federal Court and portions of the opinion of the Circuit Court of Appeals in that case, and (2) as to the amount asked for.

On hearing the matter, in open Court, Judge Dennis granted the motion for the filing of the bank's supplemental answer, which set up the plea in bar. He then ordered an immediate and separate trial of that defense; and the plaintiff thereupon gave notice, in open Court, of an appeal from this order to the Supreme Court. The trial Judge, however, ruled that such notice of appeal would not operate as a stay

and proceeded to try the plea in bar upon the record. Through the deputy clerk of the United States District Court, the record of that Court in the suit of the bank against Mitchell was identified and introduced in evidence, this being the only testimony offered. On April 18, 1931, Judge Dennis, having taken the matter under advisement, filed an order sustaining the plea in bar, holding that the cause or causes of action, pleaded in this case by plaintiff for an independent recovery against the bank, were set up by him in the Federal Court as a defense to the bank's suit on the notes; and that plaintiff could not "thus split up his cause or causes of action, whether in the shape of an answer, defense and counterclaim, or in the shape of a complaint, because the cause or causes of action had a common origin in the same facts"; and that "the final judgment in the cause in the United States District Court is *res adjudicata* as to the causes of action attempted to be raised in this case, and that the plaintiff is barred and estopped from prosecuting this action."

From this order the case comes here on appeal. There are several exceptions, but plaintiff's counsel, in their argument, have grouped them as presenting but two questions, and in our consideration of the issues made we shall follow the plan adopted by them.

The appellant complains, in the first place, that Judge Dennis committed error in requiring that the special defense of the plea in bar be tried in advance of the general trial of the case, and in ruling that plaintiff's notice of appeal to the Supreme Court did not operate as a stay.

We think the action of the Circuit Judge was proper. Only questions of law were involved in the trial of the issue made by the plea in bar. It was a matter to be decided by the Court, and, if found to be determinative of the entire case, would render further hearing on the merits useless and would dispose of the necessity of a general trial. In addition, under the provisions of Section 531 of Vol. 1 of the Code 1922, the trial Judge is vested with a

broad discretion in dealing with questions of procedure like that here presented; and, while such discretion is not unlimited, there was no abuse of it in this case. "The discretion should generally be in favor of trying those issues first which would most probably end the case." *Greene v. Washington,* 105 S. C., 137, 89 S. E., 649, 650; *Farmers' & Merchants' Nat. Bank v. Foster,* 132 S. C., 410, 129 S. E., 629. Nor, in keeping with the spirit and tendency of our decisions, was appellant entitled to a stay by reason of his notice of appeal. The trial Court's discretion to separate the plea in bar for advance trial and the beneficial results of such separation would be practically destroyed if notice of appeal from an order for such trial should be held to operate as a stay. Moreover, the plaintiff here lost none of his rights, as the question raised was preserved by such notice, to be heard and passed upon on appeal from the order giving final judgment in the case. We find no error as complained of.

We now come to the main question presented by the appeal, namely, Was the Circuit Judge in error in sustaining the plea in bar to plaintiff's action? Turning to appellant's answer in the Federal Court case, in which he appeared as a defendant, we find that the facts there pleaded by him as a defense to the bank's recovery on its notes are the same as those set out by him in his complaint as the basis of his action in the case at bar, it being alleged that the total amount paid to the bank was in excess of all sums advanced to him on the notes or otherwise, and as a result of the transaction the notes sued upon were fully paid and discharged. In addition, we find in the record of the case before us the following statement by appellant as an admission of fact on his part: "The transaction out of which the case at bar arises is the same transaction that was pleaded as a defense to the Federal action. The indebtedness of the bank to Mitchell arising from the embezzlement of the proceeds of the crop was used *pro tanto* as an offset to the claim of the bank in the Federal Court. The case at bar

seeks recovery of the surplusage, over the offset, of the proceeds of the same crop lost by the same embezzlement. The appellant, however, is not seeking to recover in this action the same money that has already been used as an offset."

The appellant states the issue to be "whether a defendant in a Federal Court action will be debarred from asserting in an independent action in the State Court a cause of action that he might have asserted (but did not) as counterclaims in the Federal Court proceeding"; and his counsel urge with much earnestness that, under the facts and the applicable principles of the law of pleading, appellant was allowed to set up, if he so elected, in his answer in the case in the Federal Court, his claim against the bank to the extent necessary only to bar the bank's recovery on the notes sued upon, having the option either to counterclaim in that action to collect the balance owing him by the bank or to bring an independent suit against the bank for that purpose. But in whatever form stated, the real question is whether Mitchell could split his cause of action, using a portion of it for defense in the Federal Court case and the balance for offense in the case at bar.

The United States Supreme Court, in *Baltimore Steamship Co. v. Phillips*, 274 U. S., 316, 47 S. Ct., 600, 602, 71 L. Ed., 1069, thus defines a cause of action: "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action. The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The thing, therefore, which in

contemplation of law as its cause, becomes a ground for action, is not the group of facts alleged in the declaration, bill, or indictment, but the result of these in a legal wrong, the existence of which, if true, they conclusively evince." ' *Chobanian v. Washburn Wire Co.,* 33 R. I., 289, 302, 80 A., 394, 400 (Ann. Cas., 1913-D, 730)."

With regard to splitting causes of action, we find this general statement in 34 C. J., 827:

"Where a demand or right of action is in its nature entire and indivisible, it cannot be split up into several causes of action and sued piecemeal, or made the basis of as many separate suits; but a recovery for one part will bar a subsequent action for the whole, the residue, or another part. A like rule forbids the splitting of defenses, or set-offs and counterclaims. Neither can a party, by assigning a part of his claim, to another, divide an entire cause of action so as to sustain more than one suit upon it. It is immaterial that the form of the second action is different from the first, or that the demand was divided for the purpose of bringing actions within the jurisdiction of a justice of the peace or other inferior Court."

"But the rule against splitting causes of action cannot be applied unless the two claims separately sued on were both parts of one and the same cause of action, equally available for purposes of suit at the time of the first action, and equally within the scope and purview of that action; and where the Court, in its discretion, limits the recovery in the first action to a part of the claim, a separate action for the residue is not barred. Nor is the rule applicable to claims omitted because of plaintiff's want of knowledge of their mere existence, or according to some decisions, because of mistake."

At page 862, with reference to a set-off or counterclaim pleaded and adjudicated, the writer has this to say: "If a defendant, having a demand against plaintiff, pleads it as a set-off or counterclaim in the action, he must make the most

of his opportunity and exhibit his whole damage, for the judgment in the action will prevent him from afterward using the same matter, or any part of it, as a separate cause of action against the former plaintiff, or as a defense or counterclaim in any subsequent action between them, whether such set-off or counterclaim was allowed or disallowed, although some authorities have held that a part of the items of a counterclaim may be withheld from consideration and afterward be used as a cause of action or set-off."

At page 863 of the same volume it is stated that: "If matters are set up in the first action merely as a defense, and not as a foundation of a claim for affirmative relief  *  *  * the judgment in such case precludes the use of the matter as a set-off or counterclaim in a subsequent action or as the basis of an independent suit against the former plaintiff."

In support of his position, however, appellant cites certain decisions of this Court, which he claims to be conclusive of the issue, relying especially upon *Kirven v. Chemical Co.,* 77 S. C., 493, 58 S. E., 424, 426; *Greenwood Drug Co. v. Bromonia Co.,* 81 S. C., 516, 62 S. E., 840, 842, 128 Am. St. Rep., 929; *Cannon v. Cox,* 98 S. C., 185, 82 S. E., 399; and *Ludlow v. King & Asbell,* 110 S. C., 88, 96 S. E., 247. These cases we shall now examine.

In *Kirven v. Chemical Company,* the record shows that Kirven had bought from the Chemical Company $2,228.00 worth of fertilizers and had given his note for that amount. The company, upon maturity of the note, brought action against him on his obligation. He at first filed an answer setting up three defenses, the third of which was that the fertilizers furnished were deleterious and destructive to the crops, and that there was an entire failure of consideration for the note. Later, he was permitted to file a supplemental answer in which he withdrew the third defense. On trial in the Federal Court, the jury rendered a verdict for the Chemical Company. Thereafter, Kirven brought an action against the company in the Court of Common Pleas for

Darlington County, alleging that the defendant caused damage to his crop in the sum of $1,995.00 by reason of the deleterious effect of the fertilizers furnished. The company set up the defense that the issues in this action were or could have been adjudicated in the suit in the Circuit Court of the United States. A verdict was given Kirven in the amount prayed for, and on appeal, as to whether the judgment rendered in the Circuit Court, on the note given for the fertilizers, was an adjudication of all the issues between the same parties in the cause in the State Court, this Court held, speaking through Mr. Justice Gary, that, while the actions were between the same parties, they were upon different claims, "one being upon a promissory note and the other for unliquidated damages." In addition, it was pointed out that the question raised in the State Court was not *actually* litigated and determined in the Federal action, and it appears that the Court, for that reason, took the view that a bar or estoppel did not exist. Mr. Justice Woods, in his concurring opinion, took the view that, as Kirven elected not to use, as a defense, the fact of *worthlessness,* which might have been available in the action of the company against him, "he was not precluded from using the very different facts of deleteriousness and positive injury caused by appellant's alleged negligence in the manufacture of the fertilizer as the basis of an independent cause of action."

We think the facts of the case at bar, however, present a different situation. The notes given by Mitchell, upon which the bank brought its action in the Federal Court, were for money advanced, under agreement among the parties, for agricultural purposes—the making of a potato crop—the crop, when harvested, to be sold and the proceeds applied to the payment of the debt, any balance to be paid to Mitchell. The proceeds, as alleged, amounted to about $18,000.00. The respective claims or causes of action of the parties arose out of the same transaction or state of facts; unlike Kirven, Mitchell pleaded in the Federal Court his claim as a defense

to the bank's claim; and even if the *Kirven case,* decided by a divided Court, was correctly decided, it is not authority, we think, under the facts of this case and in the light of the later decisions of this Court for sustaining appellant's position.

In the *Greenwood Drug Company case,* the question presented was whether a judgment on contract is an estoppel to a suit in tort based on the same facts as the defense to the suit on contract *with the additional allegation of fraud,* about which the plaintiff in the last action knew when he filed his answer, as defendant, in the former suit on contract. An action was first brought by the Bromonia Company against the Drug Company to recover judgment for the value of certain medicine, expenses, etc., amounting to $197.50, which the plaintiff claimed the defendant owed it on a contract between the parties. Recovery was had by the Bromonia Company, and the judgment was affirmed by this Court on appeal. An action was then brought by the drug company against the Bromonia Company to recover damages *for alleged fraudulent representations by that company* which induced the drug company to enter into the contract sued upon. The complaint was dismissed by the trial Judge, and on appeal the judgment was affirmed, this Court holding that "the second action substantially involves the issues actually and impliedly involved in the first action, and it is of no consequence that the form of the second action was in tort while the first action was in contract." Mr. Justice Jones, who wrote the opinion, referred to and commented upon the *Kirven case;* and, while it was not stated to be the purpose of the Court to modify the decision in that case, we think the opinion had that effect.

The *Cannon case* was an action for the recovery of damages on account of a landlord's unreasonable and excessive distress of his tenant's goods for rent. It was preceded by an action in claim and delivery brought by the tenant for repossession of the goods distrained, in which action no de-

mand for damages was made on account of the unreasonable and excessive distress. In the second action the landlord made a motion for a new trial on the ground that the question of unreasonable and excessive distress had been adjudicated in the former case. This ground was overruled, under the *Kirven case,* and the judgment was affirmed by this Court. A casual examination shows that what we have said in differentiating the case at bar from the *Kirven case* is applicable also to the *Cannon case.*

In the *Ludlow case* the plaintiff sought to recover from the defendants $176.01, which he claimed to have paid them, through mistake, inadvertence, misapprehension, and erroneous bookkeeping on their part, over and above his indebtedness to them on an account. On trial of the action plaintiff testified in his own behalf, and his counsel offered in evidence the judgment roll in a former case of *King and Asbell v. Ludlow,* in which the Court had found that King and Asbell were indebted to Ludlow in the sum of $176.01, instead of his being indebted to them. Thereupon on motion ·of plaintiff Ludlow, the trial Judge directed a verdict in his favor against the defendants for that amount. The Supreme Court, on appeal, held that, as the question whether King and Asbell were indebted to Ludlow was not made an issue in the first case and was not necessarily involved in the trial thereof, and as the Circuit Judge did not render judgment for such indebtedness, the ruling in the second case was error, as the trial Judge, in effect, held that the finding in the former case of such indebtedness was *res adjudicata* of that question. The pleadings in the first case are not given, and so we cannot be sure as to the facts constituting the basis of the holding that the issue tried in the second case was not involved in the first case, etc., but apparently the first case was an action brought by King and Asbell against Ludlow for the recovery of an alleged balance due on an account, and on trial Ludlow, in proving payment as a defense, proved that he had overpaid the account by $176.01.

His allegation in the second suit that he had overpaid the account *"through mistake, inadvertence, misapprehension, and erroneous bookkeeping on the part of defendants,"* would appear to indicate that when the first suit was brought he did not know that he had overpaid the account, and hence did not set up an affirmative claim for such overpayment, and that his lack of knowledge was without fault on his part—a situation which might well have led the Court to conclude that the circumstances were such as to constitute an exception to the general rule (24 R. C. L., 882; 34 C. J., 863; *Dupre v. Gilland,* 156 S. C., 109, 152 S. E., 873), or, in other words, to justify the statement that the question of indebtedness on the part of King and Asbell to Ludlow was not made an issue in the first case and was not necessarily involved in the trial thereof. It appears certain that Ludlow made no allegation in the first suit that he had overpaid the account.

We do not think that this case, under its peculiar facts and circumstances, supports appellant's position; and a cursory examination of what we have said as to the other cases relied upon by him shows the same to be true with reference to them. In none of these cases was it held that a plaintiff could set up as cause of action facts known to him at the time of a former action between the same parties and pleaded by him as a defense in such action.

Turning to the decisions of other Courts, we find that, while appellant's position is sustained in some few jurisdictions, the great weight of authority supports the general principles already announced. An examination of some of these cases may prove helpful and enlightening.

*O'Connor v. Varney,* 10 Gray (Mass.), 231, was an action on contract to recover damages for Varney's failure to build certain additions to a house according to the terms of a written agreement between the parties. The defendant set up as a defense "a judgment recovered by O'Connor in an action brought by Varney against him on that contract to

recover the price therein agreed to be paid for the work, in defence of which O'Connor relied on the same nonperformance by Varney, and in which an auditor to whom the case was referred, and upon whose report that judgment was rendered, found that Varney was not entitled to recover under the agreement," as the work had been so imperfectly done that it would require a greater sum than the amount sued for to make it correspond with the contract. At the trial of the second action, the trial Judge ruled that the judgment in the first suit was a bar, and directed a verdict for the defendant. The plaintiff O'Connor thereupon appealed.

Chief Justice Shaw, who rendered the opinion of the Court, said: "The presiding Judge rightly ruled that the former judgment was a bar to this action. A party against whom an action is brought on a contract has two modes of defending himself. He may allege specific breaches of the contract declared upon, and rely on them in defence. But if he intends to claim, by way of damages for nonperformance of the contract, more than the amount for which he is sued, he must not rely on the contract in defence, but must bring a cross action, and apply to the Court to have the cases continued so that the executions may be set off. He cannot use the same defence, first as a shield, and then as a sword. *Burnett v. Smith,* 4 Gray, 50; *Sargent v. Fitzpatrick,* 4 Gray, 511; *Sawyer v. Woodbury,* 7 Gray, 499 [66 Am. Dec., 518]."

It will be noted that Varney was not entitled to recover in the first suit because his dereliction amounted to more than he sued for. This would seem to be exactly the situation in the case at bar. The bank in the first suit was not allowed to recover because the injuries which Mitchell, defendant in that suit, suffered by reason of the bank's dereliction were greater than the amount for which the bank was suing. It will be observed that Chief Justice Shaw says that, if the defendant intends to claim, by way of damages

for nonperformance of the contract, *more than the amount for which he is sued,* he must not rely on the contract in defense, but must bring a cross-action, etc.

*Watkins v. American National Bank of Denver* (C. C. A.), 134 F., 36, 41, was a case in which Watkins was sued by the bank upon a $6,000.00 note. This note represented what he had agreed to pay as the purchase price for certain land which the bank had contracted to convey to him. As defense he set up that the bank had lost the title to the land and so could not convey it, that the property was worth $25,000.00, and that therefore he was not liable to pay the note. This case was decided in his favor. Later he brought a suit for $19,000.00, which he claimed to be due him as the value of the land, after deducting the $6,000.00 of which he had had the benefit in the suit brought by the bank on the note. The Court held, however, that he could not recover, the judgment in the first case being a complete adjudication of the issues involved. In this case many authorities are cited, and the decision is clear and forceful and directly in point. The Court said: "When the bank had sued Watkins on his note, he had a single, indivisible cause of action against it for $25,000.00 for its breach of its covenant to convey. The facts which conditioned that cause of action also constituted a defense to the action on the note. Watkins had the option to interpose them as a defense or as a counterclaim in the action against him, or to reserve them and to subsequently maintain an independent action upon them against the bank. But he could not do both. He elected to take the benefit of them as a defense, and he recovered the full measure of the relief which he demanded on their account. He might have recovered in that action upon the same allegations and proofs which he there made the judgment which he now seeks, if he had prayed for it. He did not do so, and the judgment in the action upon the note renders the question of the relief to which he is entitled *res adjudicata,* and estops him from maintaining an action to

recover any remainder of the damages for the breach of the bank's covenant, a part of which he used to defeat its action upon the note."

*Brown v. First National Bank of Newton* (C. C. A.), 132 F., 450, strongly supports the respondent's position in the instant case. The facts are similar in that Brown, the plaintiff, had successfully interposed as a defense in a former suit brought against him by the bank the very same facts which he attempted in the second suit to set up as a cause of action against the bank. It was held that Brown could not maintain the action.

*Riddle v. McLester-Van Hoose Co.,* 145 Ala., 307, 40 So., 101, 102, was an action for money had and received, etc., begun by Riddle against the company. It appears that Smitherman & Co., of which firm Riddle was a member, bought goods in the sum of $634.00 from the defendant. Before this partnership was formed, Smitherman was indebted to the defendant in the sum of $640.00, and after the purchase by the firm of goods from the defendant, Smitherman gave it notes for both debts, signing the firm name and his individual name, the notes so given aggregating the amount due from Smitherman individually and from the firm of Smitherman & Co. It appears that Riddle did not know of the execution of these notes, except those for the partnership debt, and as soon as he was informed of the fact he repudiated the same. The firm of Smitherman & Co. paid the defendant $1,018.00 out of partnership property, but declined to pay the balance, whereupon the defendant company sued Smitherman & Co. and the individuals of that firm for the balance due, claiming to have credited the payments first to the individual debt of Smitherman to its extinguishment, and the balance to the firm debt. Riddle, who, at the time of the suit, owned all the partnership property of Smitherman & Co., interposed a plea of set-off to the suits on the notes and had judgment on the plea. He then began a suit against the McLester Company for the dif-

ference between the amount paid by Smitherman & Co. to the defendant and the debt due by the firm to the defendant. His position evidently was that his firm had paid the McLester Company $1,018.00, whereas it owed the McLester Company only $634.00, thus leaving a balance due from the McLester Company to the Smitherman firm of $384.00. In other words, he appears to say to the defendant McLester Company in the second case: "Yes, the Smitherman firm owed you $634.00, but it paid you $1,018.00, an overpayment of $384.00. Now I want you to pay me that difference."

The Court said: "The execution of the notes [sued on in the first case] was not denied, nor was Smitherman's authority to execute them in the firm name questioned. The debt evidenced by them was admitted to be the debt of the firm. The proceeds of the checks and of the shingles were not payments upon the notes in any proper sense of the term. Their application to Smitherman's individual indebtedness was wrongful only against Riddle, his partner, and not subject to be set aside, except at his instance and election. Until he disaffirmed Smitherman's agreement with the defendant to apply the proceeds to his debt and directed their application to the partnership debt, they did not, in any sense, constitute payments on such debt. 4 Mayfield's Dig., 425; 22 Am. & Eng. Ency. Law (2d Ed.), 575, 576 and notes. That Riddle had the right to set off these claims to the extent of the debt sought to be recovered of him cannot be doubted. He was not entitled, it is true, to a judgment over in his favor for the excess. *Locke v. Locke,* 57 Ala., 473, and cases there cited. He was, of course, not bound to plead set-off as a defense. It was entirely optional with him; but having done so, and offered evidence to support his defense, and having defeated the plaintiff's recovery against him, he must be held to a release or remittitur of the residue of his demand."

This case is very similar to the case at bar, in that Riddle won his plea of set-off in the first case (in which he was a defendant), and then, in order to procure a judgment for the balance due him under all the transactions, attempted (as plaintiff) in the second case to base a cause of action upon the same facts which he had already pleaded and proved as a defense in the former case—which the Court said could not be done.

In *Miller Co. v. Harvey Mercantile Co.*, 45 N. D., 503, 178 N. W., 802, 806, issues similar to those in the case at bar were involved. The Court said:

"The familiar principles of law apply that causes of action may not be divided, and that one who has availed himself of a part of a single claim or obligation in an action or defense is estopped thereafter from enforcing the remainder of it. 23 Cyc., 1174, 1202. This follows the famous expression by Chief Justice Shaw in *O'Connor v. Varney*, 10 Gray (Mass.), 231, that one cannot use the same defense first as a shield and then as a sword. [Citing authorities.] This is simply the application of an equitable rule that one should not be compelled to answer, or be required to pay twice for the same claim. * * *

"If in the application of such principles the want of full satisfaction accrues to the plaintiff, it is only because of its own actions, deliberately taken in choosing the method of enforcing its claims and demands."

The spirit and tendency of our own decisions are to the same effect. In *Citizens' Savings Bank v. Efird*, 96 S. C., 18, 79 S. E., 637, it was said that the "Code of Procedure was adopted for the purpose of getting the Courts away from the technicalities of common-law pleading and practice." See, also, *Tunstall v. Lerner Shops*, 160 S. C., 557, 159 S. E., 386; *Sovereign Camp of Woodmen of the World v. Means*, 87 S. C., 127, 69 S. E., 85. It has been repeatedly pointed out by this Court that the "object of the framers of the Code of Procedure was to secure the trial, for all parties

interested in the cause, of those issues which practically had the same birth." *Cline v. Railway Co.,* 110 S. C., 534, 96 S. E., 532, 539. "The defendant is, therefore, bound to plead his defenses, legal and equitable, in the action brought, and is estopped from instituting a separate proceeding in the same cause with the same party." *Rice v. Mahaffey,* 9 S. C., 281.

In *Willis v. Tozer,* 44 S. C., 1, 21 S. E., 617, 622, the Court held: "A judgment is conclusive between the parties to it not only as to those matters which were actually decided, but also all such as were necessarily involved in its rendition."

With regard to the question of *res adjudicata,* see *Hart v. Bates,* 17 S. C., 35; *Johnston-Crews Co. v. Folk,* 118 S. C., 470, 111 S. E., 15; *McConnell v. Davis,* 128 S. C., 111, 122 S. E., 399; *Brown v. Huskamp,* 141 S. C., 121, 139 S. E., 181.

In *Ruff v. Doty,* 26 S. C., 173, 1 S. E., 707, 711, 4 Am. St. Rep., 709, the Court, referring to the *Bates case,* and to *Fraser & Dill v. Charleston,* 19 S. C., 399, said: "These two cases, considered together, decide, briefly, that a matter not necessarily involved and not raised in a previous case is not *res adjudicata;* but if necessarily involved, whether raised or not, it is concluded, and especially so, if the party denying the adjudication knew of the matter and could have interposed it at the previous trial, either in support of a claim or as a defense."

The appellant Mitchell concedes that, if his position and theory in the present case were inconsistent with his position in the Federal case, or if the matters pleaded here as a cause of action and there as a defense had been there decided against him, he would be out of Court; but contends that, as he won in the first action, the facts there pleaded as a defense being identical with those set up by him as constituting his cause of action in the present suit, under the decision in the *Ludlow case* the judgment in the former suit

is not a bar to the present action. What we have already said with reference to the *Ludlow case* shows that that case may not be held to support this view. Nor do we think the position sound. It is true that in some decisions the Courts hold that, where a defendant loses in an action, the judgment would operate as a bar to a subsequent suit brought by him as plaintiff on the same state of facts pleaded by him as a defense in the former action, for the reason that the facts he must establish to authorize his recovery in the second action are inconsistent with, or in direct opposition to, the facts on which the plaintiff in the first action recovered. In such case, it would not be necessary to look further in order to see that he could not recover in the second action. There is no conflict between this holding and the generally accepted rule against splitting a cause of action. In fact, in some of the cases examined, the rule against splitting a cause of action is advanced as the basis of the holding that the result of the first suit, being adverse to the defendant, constitutes a bar to the subsequent action by him as plaintiff on the same claim or demand. And the fact that, in order to recover in the second suit, he would have to show a state of facts contrary to the former adjudication, is sometimes stated as an additional ground to support the Court's decision. We here direct attention to a few cases as illustrative of the point.

*Jones v. Charles Warner Co.,* 2 Boyce (25 Del.), 566, 83 A., 131, 134, was an action for the recovery of damages alleged to have been sustained by the plaintiff through failure of the defendant company to sell and deliver mortar of a quality suitable for use in the erection and construction of a certain building. It appears that the company in a prior action, as plaintiff, had brought suit against Jones for the balance of the price of the mortar, and that he had appeared in that action and defended on the ground that the mortar was not suitable for the purposes for which it was bought. Judgment was rendered against him, and the Warner Com-

pany, as defendant in the second action, set up the judgment obtained in the first action as a bar. The Court said: "The plaintiff in this action, having availed himself of his right and privilege to show before the justice that the mortar was unsuitable for the purpose for which he bought it, and being obliged in his present action to rely on the same alleged fact, considered and adjudicated by the said justice of the peace in the former action, we think he cannot now controvert said fact, and that he is barred and estopped from showing any defects in the said mortar and from maintaining his present action."

But it also declared: "Recoupment of matters of damage growing out of the same transaction and for which a separate action could be maintained, is allowable by way of defense, after notice, at the election of the defendant, instead of compelling him to resort to a cross action for such damages. Whenever a defendant has a claim for such damages, he may, at his election, exercise his privilege to recoup. He is not compelled to do so, and if he does he cannot subsequently maintain an action for such damages, or any part thereof."

So in *Bierer & Downer v. Fretz*, 37 Kan., 27, 14 P., 558, 559, where it appears that Bierer & Downer had pleaded as a defense in a former action between the same parties the same facts which they set up as constituting their cause of action, as plaintiffs, in their petition in the second action. In the first action they lost, and Fretz, as defendant in the second action, pleaded the judgment rendered in the first suit as a bar. The Court said: "A judgment for Fretz in the former action disposed of not only the defenses supported by evidence, but all others that were tried or ought to have been tried, and swept them all away; and that, too, for the purposes of all subsequent actions that might have been founded upon the same transaction." But it also held: "A party cannot split up his defenses, and present them by piecemeal in successive suits arising out of the same trans-

action, nor can he relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties about the same subject-matter; and this rule holds true whether the matter that might have been litigated in the former trial would have been therein a ground of action or a defense to the action then pending."

And so in the case of *South & N. A. R. Co. v. Henlein & Barr,* 56 Ala., 368, in which Henlein & Barr, as plaintiffs, pleaded as constituting a cause of action the same facts pleaded by them as a defense in a former action brought in a justice's Court by the railway company, as plaintiff, against them, and in which they lost. The Court said: "It is well settled, that a single contract, unless it be payable in installments, can not be split up, and become the foundation of a plurality of suits; and if the owner of such claim or cause of action brings suit on a part of it, *and either succeed or fail in such suit,* he can not afterwards sue on the residue of the claim or cause of action. The reason is the simple, yet well-known proposition, that the law will not permit such splitting up of a single cause of action." (Italics ours.) But added: "Another principle is, perhaps, fatal to the plaintiffs' right of recovery in the present action, if the statements of the bill of exceptions be true. The defense they offered before Justice Nettles, presented the same want of diligence, and the same damage, to the same property, as those set up in the present suit. In that case, they were adjudged insufficient to bar a recovery. The claim thereby became *res judicata,* and can not be the foundation of an independent suit." And concluded: "In every aspect in which we can view this question, we hold that Henlein & Barr, by the defense they made before Justice Nettles, have tested the validity of their demand, and have consented to abandon all claim against the railroad, except that which they asserted in that action; and that, having failed in that defense, they have barred themselves of all right to maintain a suit on that claim, or any part thereof."

In the matter before us, the legal wrong which Mitchell suffered was the violation by the bank of his right to receive the proceeds of his potato crop which had come into the bank's hands, amounting to about $18,000.00, and for this wrong he had a single indivisible cause of action against the bank. When the bank sued him on his two notes, amounting to about $9,000.00, he had the option to interpose his claim as a defense to that suit or to demand judgment against the bank, by way of counterclaim, for the amount owing him by it. He elected to set up his claim as a defense only, and the jury applied it to the payment of the notes held by the bank. The transaction out of which the case at bar arises is the same transaction that Mitchell pleaded as a defense in the Federal suit. He might, therefore, "have recovered in that action, upon the same allegations and proofs which he there made, the judgment which he now seeks, if he had prayed for it." He did not do this, but attempted to split his cause of action, and to use one portion of it for defense in that suit and to reserve the remainder for offense in a subsequent suit, which, under applicable principles, could not be done. As said in the *Miller Company case:* "If in the application of such principles the want of full satisfaction accrues to the plaintiff, it is only because of its [his] own actions, deliberately taken in choosing the method of enforcing its [his] claims and demands."

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and Circuit Judge C. C. FEATHERSTONE, ACTING ASSOCIATE JUSTICE, concur.