0738

Robert NUNNERY, d/b/a Nunnery Roofing Company and Roofing Enterprises of South Carolina, Inc., Respondents v. BRANTLEY CONSTRUCTION CO., INC., and the American Arbitration Association, Inc., of which Brantley Construction Co., Inc., is Appellant.

(345 S. E. (2d) 740)

Court of Appeals

*Rudolph C. Barnes, Jr.,* of *Barnes, Alford, Stork & Johnson,* Columbia, *for appellant.*

*John E. Miles,* Sumter, *for respondents.*

Heard March 25, 1986.

Decided June 23, 1986.

GOOLSBY, Judge:

Robert Nunnery, who does business as Nunnery Roofing Company, and Roofing Enterprises of South Carolina, Inc., brought suit against Brantley Construction Company, Inc., and the American Arbitration Association, Inc., to enjoin arbitration proceedings brought before the Association by Brantley against Nunnery and Roofing Enterprises. The circuit court granted the injunction and Brantley appeals. We affirm.

The dispositive issue on appeal concerns whether the principles of *res judicata* bar Bradley from arbitrating its claim that Nunnery and Roofing Enterprises performed defective roofing work.

Brantley, a general contractor, subcontracted with Nunnery on August 18, 1980, to roof a building owned by the Department of the Navy at the Marine Air Station near Beaufort, South Carolina. Article 3 of the contract provides in part:

> All work by [Nunnery] must be completed so as to meet [Brantley's] schedule. If [Nunnery] ... fails to complete the work within the time specified, it is agreed ... that [Nunnery] shall pay as ... liquidated damages suffered by [Brantley] the amount of $25.00 per day for each day ... of the job delayed.

In January, 1982, Nunnery brought an action against Brantley alleging Brantley owed him $6,190.98 on the roofing contract. Brantley counterclaimed alleging that Nunnery "failed to perform [the roofing] work properly causing rejection of the same and the removal and reinstallation of

the rejected roof resulting in extensive delay damages to [Brantley]."

Several months later, on June 7, 1982, Nunnery and Brantley settled the action. The action was dismissed "with prejudice" by a consent order.

On June 18, 1982, the Navy inspected the roof and found a number of leaks. According to the naval officer in charge of the construction, the leaks discovered during the inspection resulted from latent defects and from defective repairs and were previously unknown. The officer conceded, however, that "there were continuing problems with leaks in the roof prior to June, 1982."

The Navy subsequently required Brantley to make extensive repairs to the roof. These repairs cost Brantley $41,253.20.

On March 6, 1984, Brantley, pursuant to the arbitration provisions of its contract with Nunnery, served a Demand for Arbitration upon Nunnery and Roofing Enterprises, Nunnery's successor in interest. By its demand, Brantley sought "to recover costs of correcting certain defective roofing work provided by ... Nunnery ... and Roofing Enterprises ... under [Nunnery's] subcontract ..." Copies of the arbitration agreement and the demand were filed with the Association.

Upon receiving the arbitration demand, Nunnery and Roofing Enterprises brought the instant action. They obtained a temporary restraining order on March 16, 1984.

Following a hearing conducted on April 24, 1984, the circuit court on July 3, 1984, issued an order permanently enjoining Brantley and the Association from proceeding to arbitrate Brantley's claim. The circuit court held that principles of *res judicata* bar Brantley from arbitrating its claim and that Brantley waived its right to seek arbitration by filing a counterclaim in the prior action, defending the claim brought by Nunnery, settling the suit, and agreeing to dismiss both actions with prejudice.

Brantley contends the circuit court committed error in using *res judicata* principles to enjoin it from arbitrating its claim against Nunnery and Roofing Enterprises for defective performance.

Our Supreme Court in *Bagwell v. Hinton*, 205 S. C. 377, 400, 32 S. E. (2d) 147, 156 (1944), held that the following elements must be shown in order to establish the plea of *res judicata:*

> (1) The parties must be the same or their privies; (2) the subject matter must be the same; and (3) while generally the precise point must be ruled, yet where the parties are the same or are in privity the judgment is an absolute bar not only of what was decided but of what might have been decided.

*See also Ford v. Watson*, 282 S. C. 66, 316 S. E. (2d) 429 (Ct. App. 1984). A dismissal "with prejudice" indicates an adjudication on the merits and, operating as *res judicata*, precludes subsequent litigation to the same extent as if the action had been tried to a final adjudication. *Mumford v. Hutton & Bourbonnais Co.*, 47 N. C. App. 440, 267 S. E. (2d) 511 (1980); 46 Am. Jur. (2d) *Judgments* § 482 at 645 (1969). Where an action has been so dismissed, the judgment operates, in a subsequent action involving the same subject matter, "so as to conclusively settle not only all matters litigated in the earlier proceedings, but also all matters which might have been litigated therein." *Id.*

For a judgment to bar the maintenance of a subsequent action, there must be identity of the cause of action as well as identity of the subject matter. *Griggs v. Griggs*, 214 S. C. 177, 51 S. E. (2d) 622 (1949); 46 Am. Jur. (2d) *Judgments* § 404 at 573 (1969). The pivotal question here, then, is whether the subject matter of the arbitration proceedings and of Brantley's prior counterclaim embrace the same cause of action. *See Lowe v. Clayton*, 264 S. C. 75, 212 S. E. (2d) 582 (1975). In determining this issue, we are mindful of the rule that prohibits the owner of a single cause of action from either dividing or splitting the cause of action so as to make it the subject of several causes of action unless the party against whom the cause of action exists consents thereto. *See Mitchell v. Federal Intermediate Credit Bank of Columbia*, 165 S. C. 457, 164 S. E. 136 (1932); 1 Am. Jur. (2d) *Actions* § 127 at 647 (1962).

For the purpose of applying principles of *res judicata*, a fundamental test used for comparing causes of action is to determine whether the primary right and duty and the delict or wrong are the same in each action. 46 Am. Jur. (2d) *Judgments* § 406 at 574-75 (1969). "Under this test, there is but one cause of action where there is but one right in the plaintiff and one wrong on the part of the defendant involving that right." *Id.* at 575.

When we compare Brantley's counterclaim in the former action with its demand for arbitration in the second proceeding and consider the record before us, we think it manifest that the causes of action are the same.

The counterclaim filed by Brantley in the former action sought to recover as damages the liquidated damages assessed against Brantley by the Navy and other additional costs incurred by Brantley as a result of Nunnery's delay in completing construction of the roof. The demand for arbitration, on the other hand, seeks to recover the costs Brantley sustained for allegedly having to correct "certain defective roofing work" performed by Nunnery and Roofing Enterprises.

Both causes of action arise out of the same contract and involve an alleged breach thereof in that they both question Nunnery's performance under the contract. The fact that Brantley by its counterclaim in the first action chose not to request all the damages it suffered because of Nunnery's breach of the roofing contract does not prevent *res judicata* from operating to bar Brantley's prosecution of the second action. As our Supreme Court observed in *Mitchell*, quoting from 34 C. J. *Judgments* § 1275 at 862 (1924),

> "If a defendant, having a demand against plaintiff, pleads it as a ... counterclaim in the action, he must make the most of his opportunity and exhibit his whole damage, for the judgment in the action will prevent him from afterward using the same matter, or any part of it, as a separate cause of action against the former plaintiff ... in any subsequent action between them, whether such ... counterclaim was allowed or disallowed...."

165 S. C. at 465-66, 164 S. E. at 138; *see Smith v. Smith*, 18 S. C. Eq. (1 Rich. Eq.) 130 (1845).

The record is clear that Brantley's cause of action for an alleged defective roof had accrued before the earlier action was dismissed since it shows that the existence of a serious roofing problem either could have been discovered or reasonably should have been discovered by Brantley prior to the dismissal of the first action. *See Dillon County School District Number Two v. Lewis Sheet Metal Works, Inc.*, 286 S. C. 207, 332 S. E. (2d) 555 (Ct. App. 1985), *cert. granted*, 287 S. C. 234, 337 S. E. (2d) 697 (1985), *cert. dismissed*, 343 S. E. (2d) 613. As we noted previously, the navy officer in charge of the construction indicated the problem with the roof leaking had been a recurring one and had existed before the first action was terminated.

Thus, Brantley could have litigated in the first action the question of whether the roof was defectively constructed. Because Brantley dismissed the action without having litigated the question and without having obtained Nunnery's consent to split its cause of action for the purpose of preserving this part of its claim, Brantley is precluded from litigating the question of the roof's alleged defective construction in the arbitration proceeding. Brantley "has had [its] day in Court," both as to the question of Nunnery's alleged untimely performance of the roofing contract and as to the question of Nunnery's alleged defective performance of the roofing contract. *Graham v. State Farm Fire and Casualty Insurance Co.*, 277 S. C. 389, 391, 287 S. E. (2d) 495, 496 (1982).

We do not reach Brantley's contention that the circuit court erred in holding that Brantley waived its right to arbitrate its claim by, among other things, filing a counterclaim in the action brought by Nunnery.

Affirmed.

SHAW, J., concurs.

CURETON, Judge dissents.

CURETON, Judge (dissenting):

. I disagree with the majority's holding that Brantley's claim for arbitration is barred by principles of *res judicata.* In disagreeing, I view the facts somewhat differently from the majority.

The record before us contains no live testimony, but only the pleadings and affidavits of several persons.[1] As I view the pleadings, contract and affidavits, the following facts appear.[2] Brantley and Nunnery entered into a contract that required Nunnery to install a new roof on a Navy building. Nunnery installed the roof defectively, thus requiring Nunnery to perform certain repairs to it. After the repairs had been completed and the roof accepted by the Navy, the parties settled Brantley's counterclaim against Nunnery for damages caused by Nunnery's delay in installing the original roof and in correcting certain defects in a portion of the roof. At the time of the settlement, all involved apparently thought that the roof had been installed and/or repaired to the satisfaction of the Navy.[3]

After the settlement, the Navy inspected the roof again and discovered that areas of the roof continued to leak. Whereupon Brantley requested Nunnery to correct the leaks. Nunnery refused and Brantley hired another company to make extensive repairs to part of the roof and to replace a portion of the roof. There is no evidence to support the majority's view that Brantley knew or should have known that a serious roof problem existed at the time it dismissed the counterclaim. Contrary to the view of the majority, I see nothing in the affidavit of the officer who was charged by the Navy to perform inspections on the roof which indicates the Navy or Brantley could have reasonably discovered the defects resulting from the reinstallation and repairs prior to the dismissal of Brantley's counterclaim against Nunnery. The officer stated in his affidavit:

> 2. That as a result of inspections of the roofing work on 18 June 1982 and thereafter, certain leaks were observed indicating problems with Roof Areas X, Y, and Z as shown on Navac Drawing No. 5064350, Sheet No. 5 of the Contract between the Navy and Brantley Construction Co., Inc. Subsequent inspections of said roof and the source of the leaks indicated that the leaks resulted

---

[1] I am unable to locate a stipulation in the record that the parties agreed to submit the case based on affidavits only.

[2] There is absolutely no way to judge the credibility of the affiants.

[3] The roof was divided into areas X, Y and Z. Area "Y" is not involved in the arbitration claim.

from *laten (sic) defects in Roof Area Z and defective repairs to Roof Area X,* (emphasis added) which defects did not become known to the Navy until its inspection on 18 June 1982 and thereafter, as set forth in that letter to Brantley Construction Co., Inc. from F. D. Puncke, Jr. dated 23 June 1982.

3. That while there were continuing problems with leaks in the roof prior to June, 1982, leaks discovered on 18 June 1982 and thereafter were unknown to the Navy prior to that time, and since they constituted warranty items under the aforesaid Contracts, the Navy subsequently required Brantley Construction Co., Inc. to make extensive repairs and to replace certain portions of the roof to correct said leaks in accordance with the warranty provisions of the Construction Contract and Subcontract.

Upon comparing the counterclaim in the former action with the demand for arbitration, and upon a consideration of the record before me, I am convinced that the causes of action differ. The counterclaim in the first action is for damages incurred by the delayed performance of Nunnery in installing and repairing the original roof. In its demand for arbitration, Brantley seeks to recover the costs for reinstalling a portion of the roof and extensive repairs made to another part.

Latent defects have been defined in various ways. Latent defects are hidden defects generally involving the material out of which the thing is constructed. *Ross v. Tynes,* 14 So. (2d) 80, 83 (La. Ct. App. 1943). Latent defects are those which a reasonably careful inspection will not reveal or those which could not have been discovered by such an inspection. *Vincent v. Salt Lake County, Utah,* 583 P. (2d) 105, 108 (1978); *Roberts v. Rogers,* 129 Neb. 298, 261 N. W. 354, 357 (1935). A latent defect is one of which Brantley had no knowledge and, in the exercise of reasonable care, could not have discovered. *Bichl v. Poinier,* 71 Wash. (2d) 492, 429 P. (2d) 228, 231 (1967).

Inasmuch as *res judicata* principles apply to matters that "might have been decided" [*Bagwell v. Hinton,* 205 S. C. 377, 400, 32 S. E. (2d) 147, 156 (1944)] and to "issues which could have been raised in the former suit" [*Ford v. Watson,* 282

S. C. 66, 316 S. E. (2d) 429 (Ct. App. 1984)], I fail to see how this principle would bar that part of the arbitration claim that is based upon latent defects in the roof that were undiscoverable by inspection or customary tests. *Cf. Brown v. Sandwood Development Corp.*, 277 S. C. 581, 291 S. E. (2d) 375 (1982) (tort action involving latent defects does not arise until latent defects are discovered). "Generally, an action cannot properly be commenced until all of the essential elements of the cause of action are in existence ... the subsequent occurrence of a material fact will not avail in maintaining it." *American Agricultural Chemical Co. v. Thomas*, 206 S. C. 355, 34 S. E. (2d) 592 (1945). Accordingly, I cannot say that by settling with Nunnery in the prior suit, Brantley settled a cause of action which had not yet accrued and which was not within the contemplation of the parties at the time Brantley's counterclaim was dismissed.

I would hold that as to the roof area (Roof Area Z) that required replacement or repair by reason of latent defects, Brantley should be permitted to arbitrate its claim. However, as to that portion of Brantley's claim that concerns damages for defective repairs to Roof Area X, I would uphold the trial court's injunction. Clearly, as to damages resulting from latent defects in Roof Area Z, Brantley had no opportunity to litigate its claim in the prior suit and should be permitted to do so now. *See Birnbaum v. Hall*, 101 F. Supp. 605 (D.S.C. 1952) (where second suit is upon a different claim, the judgment in former suit is *res judicata* only as to those issues actually determined).

Brantley further contends the trial court erred in holding that Brantley had waived its right to arbitrate its claim by filing a counterclaim in the action brought by Nunnery. I agree.

Article 13.1 of the contract between Brantley and Nunnery recognizes that more than one claim can arise out of the contract and be subject to arbitration. The article reads: "All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, shall be decided by arbitration...."

Neither the Supreme Court nor this court has decided whether the waiver of the right to arbitrate one claim arising under a contract by participation in a judicial pro-

ceeding constitutes a waiver of the right to arbitrate other unrelated claims arising under the contract. Some courts hold that when some participation in a judicial proceeding constitutes a waiver of the right to arbitrate a part of a dispute arising under the contract, the waiver extends to the entire contract. *See e.g., Midwest Window Systems, Inc. v. Amcor Industries, Inc.,* 630 F. (2d) 535 (7th Cir. 1980); *Gutor International AG v. Raymond Packer Co.,* 493 F. (2d) 938 (1st Cir. 1974). Indeed, our own case of *King v. Oxford,* 282 S. C. 307, 318 S. E. (2d) 125 (Ct. App. 1984) may be read to stand for the proposition that interrelated parts of a dispute are deemed waived by participation in a judicial proceeding involving arbitrable issues.

In any case, I think the better rule is that, when a party waives the right to arbitrate an issue by participating in a judicial proceeding, the waiver does not extend to unrelated issues arising under the contract absent additional evidence that the party intentionally relinquished or abandoned the right to arbitrate those issues. *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 450 A. (2d) 1304 (1982); *Standard Co. of New Orleans, Inc. v. Elliott Construction Co.,* 363 So. (2d) 671 (La. 1978); *Denihan v. Denihan,* 34 N. Y. (2d) 307, 357 N.Y.S. (2d) 454, 313 N. E. (2d) 759 (1974); *cf. Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25, 103 S. Ct. 927, 941-942, 74 L. Ed. (2d) 765, 785 (1983) ("any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is ... an allegation of waiver ...").

Here, the issues in the action embraced by Brantley's counterclaim and in the demand for arbitration are separate and distinct. The claim presented by the counterclaim involved issues of liability for delayed performance. The claim presented by the demand for arbitration involves issues of liability for defective performance. Further, there is no evidence that Brantley intentionally relinquished or abandoned its right to arbitrate these issues. I would reverse that portion of the trial court's order that prohibits Brantley from arbitrating its damages caused by latent defects to a part of the roof.