1426

JIMMY MARTIN REALTY GROUP, INC., a/k/a The Key Company, Inc., d/b/a Great Games, Appellant v. FAMECO DISTRIBUTORS, INC., Respondent.

(386 S. E. (2d) 803)

Court of Appeals

---

*Jean P. Derrick,* Lexington, *for appellant.*

*Clifton Newman* and *Ronnie A. Sabb,* Columbia, *for respondent.*

Heard Nov. 8, 1989.

Decided Dec. 4, 1989.

*Per Curiam:*

The only issue presented in this appeal by Jimmy Martin Realty Group, Inc., also known as The Key Company, Inc., doing business as Great Games, is whether principles of res judicata bar it from litigating a claim for breach of contract accompanied by fraudulent acts against the respondent Fameco Distributors, Inc. We hold that they do so and affirm the judgment.

Great Games previously brought an action against Fame-

co alleging Fameco committed a number of unfair and deceptive acts and practices and deliberately breached a contract between the parties regarding coin-operated videogame machines placed by Great Games in a nightclub operated by Fameco. It based its claim on the South Carolina Unfair Trade Practices Act. *See* S. C. CODE ANN. Secs. 39-5-10 *et seq.* (1976 & Supp. 1988). This court reversed a judgment entered in Great Games' favor, holding that the trial court erred in denying Fameco's motions for directed verdict and judgment notwithstanding the verdict. *The Key Co., Inc., d/b/a Great Games v. Fameco Distributors, Inc.,* 292 S. C. 524, 357 S. E. (2d) 476 (Ct. App. 1987).

Great Games then instituted the instant action alleging a claim for breach of contract accompanied by fraudulent acts. Great Games grounds the claim on the same set of essential facts that it alleged in the prior action, namely that Fameco committed several unfair and deceptive acts and practices and deliberately breached its contract with Great Games regarding Great Games' coin-operated videogame machines.

Fameco moved to dismiss the complaint pursuant to Rule 12(b) of the South Carolina Rules of Civil Procedure, contending Great Games "is now barred as a matter of law" from litigating against Fameco its claim for breach of contract accompanied by fraudulent acts. The hearing judge granted the motion. After finding the earlier action involved "the same parties" and "the same subject matter," he found that there had been "a final determination on the merits of [Great Games'] claim in [the] prior action" and that Great Games "had a full and fair opportunity to litigate the issues in the previous action."

Under the doctrine of res judicata, a final judgment on the merits in a prior action will conclude the parties and their privies in a second action based on the same cause of action as to issues actually litigated and as to issues that might have been litigated in the first action. *Hilton Head Center of South Carolina, Inc. v. Public Service Commission of South Carolina,* 294 S. C. 9, 362 S. E. (2d) 176 (1987); *Beall v. Doe,* 281 S. C. 363, 315 S. E. (2d) 186 (Ct. App. 1984).

Great Games contends the doctrine has no application

here because the prior action did not result in a final judgment "on the merits" and because the causes of action alleged in the first and second suits are not the same.

## I.

Contrary to Great Games' assertion, the first suit did result in a final judgment on merits. This occurred when we reversed the judgment in Great Games' favor in the prior action because of the trial court's failure to grant Fameco's motion for directed verdict and judgment notwithstanding the verdict. Our reversal necessarily went to the merits, aimed as it was at the failure of the trial court to grant Fameco's motions for directed verdict and judgment notwithstanding the verdict. *See McCown v. Muldrow,* 91 S. C. 523, 74 S. E. 386 (1912) (a directed verdict motion involves the merits and a judgment rendered thereupon is res judicata as to all questions properly arising under the pleadings); *Cutts v. Casey,* 278 N. C. 390, 180 S. E. (2d) 297 (1971) (a defendant is entitled to a judgment on the merits when the court grants a motion for a directed verdict under Rule 50(a) ); 88 C. J. S. *Trial* Sec. 238b at 547 (1955) (a direction of a verdict concludes the controversy and is a bar to a second action); 50 C. J. S. *Judgments* Sec. 625 at 51 (1947) (a judgment has all the characteristics necessary to constitute it res judicata where the reversal shows an intention finally to decide the case on the merits).

Great Games relies on *Lancaster v. Smithco, Inc.,* 241 S. C. 451, 128 S. E. (2d) 915 (1962), to support its contention that there was no adjudication on the merits in the earlier suit. Its reliance on *Lancaster,* however, is misplaced. *Lancaster* ended by a nonsuit and not by a directed verdict. The granting of a nonsuit will not support a plea of res judicata. *Gary v. Nationwide Mutual Insurance Company,* 249 S. C. 101, 152 S. E. (2d) 689 (1967); *McCown v. Muldrow, supra; Henson v. Akers Motor Lines, Inc.,* 3 N. C. App. 447, 165 S. E. (2d) 265 (1969); 88 C. J. S. *Trial* Sec. 238b at 547-48 (1955).

## II.

We find no merit to Great Games' contention that its claim for breach of contract accompanied by fraudulent acts is not the same cause of action as its claim

for violation of the Unfair Trade Practices Act. The subject matter of both claims concerns one primary right held by Great Games and one wrong committed by Fameco in breach of that primary right. *Nunnery v. Brantley Construction Company, Inc.*, 289 S. C. 205, 345 S. E. (2d) 740 (Ct. App. 1986) (a fundamental test for comparing causes of action for the purpose of applying principles of res judicata is to determine whether the primary right and duty and the delict or wrong are the same in each action). The primary right asserted in both actions arises out of the same contract and the wrong alleged in both actions encompasses the same breach thereof and the same accompanying deceptive and unfair acts. *See Harth v. United Insurance Company of America*, 266 S. C. 1, 5, 221 S. E. (2d) 102, 104 (1975) ("The *subject* of the action ... must be the matter ... in regard to which the controversy has arisen, concerning which the wrong has been done; and this ordinarily is the ... contract and its subject matter...." [Italics theirs] ).

Affirmed.