## BRYAN *v.* JONES, administrator.

Under the pleadings and evidence in the case, the court did not err in directing the jury to return a verdict sustaining the plea of former recovery and of res. adjudicata.
    SEPTEMBER 24, 1912.

Complaint. Before Judge Jones. Lumpkin superior court. April 18, 1911.

*O. J. Lilly,* for plaintiff, cited *Watkins* v. *Lawton,* 69 *Ga.* 671;

*Bonds* v. *Brown*, 133 *Ga*. 454 (66 S. E. 156) ; *Draper* v. *Medlock*, 122 *Ga*. 234 (50 S. E. 113, 69 L. R. A. 483, 2 Ann. Cas. 50) ; *Wheeless* v. *Carter*, 120 *Ga*. 725 (48 S. E. 121) ; *Johnson* v. *Reeves*, 112 *Ga*. 690 (37 S. E. 980) ; *Jordan* v. *Jordan*, 12 *Ga*. 77 ; 24 Am. & Eng. Enc. L. (2d ed.) 766 ; 23 Cyc. 1202.

*H. H. Perry, W. B. Sloan*, and *R. H. Baker*, for defendant, cited *Halliday* v. *Bank*, 128 *Ga*. 639 (58 S. E. 169) ; *Atlanta Elevator Co.* v. *Fulton Mills*, 106 *Ga*. 427 (32 S. E. 541) ; *Stevens* v. *Stembridge*, 104 *Ga*. 619 (31 S. E. 413) ; 24 Am. & Eng. Enc. L. (2d ed.) 766, 780, 781, 784.

BECK, J. Martin Bryan brought suit against W. H. Jones, administrator of the estate of G. W. Bruce, deceased, to recover the value of services rendered to the deceased during the closing days of his life, covering a period of several months, and consisting in the plaintiff's remaining with, nursing, and caring for Mr. Bruce and looking after his household and business affairs. The administrator answered generally, and filed a special plea of former recovery and of res adjudicata. Upon the trial of the issue made by this special plea the court directed the jury to return a verdict in favor of the plea and against the plaintiff. The evidence introduced by the administrator in support of his plea of res adjudicata was the record in a former suit between the said Jones, administrator, as plaintiff, and the said Bryan as defendant; in which suit the administrator sought to recover from Bryan certain furniture and certain money, consisting of gold coin and currency, which it was alleged belonged to the estate of Bruce and was wrongfully carried off and retained by Bryan. In his answer to that suit Bryan denied that he had in his possession any money or property belonging to the estate of Bruce, and averred that all money and property taken possession of by him was so held by virtue of a gift from Bruce, and was paid to him on account of services rendered the latter. Upon the issue thus made the jury returned a verdict in favor of Bryan as to the currency and in favor of the administrator as to the gold and the furniture. The judgment in that case was relied upon by the defendant in the present case to establish the plea of former recovery.

We are of the opinion that under the facts of this case the verdict finding that the plea of former recovery and of res adjudicata had been established was properly directed by the court.

The record of the former suit, containing the pleadings in that suit, and the evidence introduced by the plaintiff and defendant in the same, and the judgment of the court, shows affirmatively that a certain amount of currency and of gold coin amounting to $440 had been turned over by G. W. Bruce, the intestate of the administrator, who is the defendant in the present suit and the plaintiff in the former suit, to Bryan, the plaintiff in the present suit. Bryan, in his plea filed to the former suit, alleged, among other things, "G. W. Bruce gave the defendant the remainder of said money, together with said gold watch referred to in said petition, and said household and kitchen furniture, stating to defendant then and there that said money, watch, and household and kitchen furniture was given to him on account of his services rendered to the said G. W. Bruce and wife. The defendant took and carried away from said house only such money, property, and furniture as was given him by the said G. W. Bruce, and nothing more. The allegations of paragraph seven [that is, of the petition in the former case, which charged that Bryan admitted having in his possession certain furniture, a watch, $500 in gold coin and other moneys, and claimed that they had been given to him by G. W. Bruce] are substantially true; but defendant says that he has and holds possession of said furniture, watch, and money by virtue of a gift from the said G. W. Bruce to the said defendant, as is set forth in answer to paragraph six of said petition." While the defendant in his plea in the former suit does call the money and property turned over to him a "gift," he also shows that it was given to him on account of his services rendered to the said Bruce and his wife. The jury trying the former case found for the plaintiff "as to the gold and the furniture and watch, and for the defendant as to the currency and that pertaining to the currency." On the trial of the former case evidence was introduced tending to show that the defendant admitted getting some currency and also about $500 in gold coin. The defendant also introduced in that case one witness, P. L. Lee, who testified that on one occasion just a few days before the death of Bruce the latter "talked to Martin, told him something; I could not tell what he was telling; and he asked Uncle Jack; he told him, nothing, that he had just come there to wait on him and he didn't want nothing. I never heard him tell Martin, Uncle Winse talked low. Martin [Bryan] then got the

money out from Uncle Winse's head and gave Babe $100, gave me $50, and my wife $50, and Uncle Jack $50. He told Martin he could have the rest, or balance, one. Martin never done anything, only just hung up the pants; told Uncle Winse there was nothing in the pockets. That was about five days before he died. . . During the time that I had known them Uncle Winse had been pretty feeble most of the time. Martin Bryan looked after their affairs by getting their wood, looking after them, and when they needed anything they always sent for Martin. He also looked after the fencing and repairs of any kind. Uncle Winse said that night that he was glad he had lived long enough to give the money to his friends who had waited on him. He said this after the distribution. . . Martin Bryan was to have that and what was in the house. Uncle Winse told him that what was in the house was his. That was the night he gave the money out, just after. If there was any money left after the distribution, I never saw it. Martin Bryan made this distribution. I don't know whether there was any left in his hands or not. Uncle Winse told him the balance of it was his. I never heard Uncle Winse say how much money he had there—always told me he had enough to do him and Aunt Nancy. The night the money was distributed I was sitting out on the porch when he first called us. I went in, but could not tell what he told Martin when he went to get the money. He pulled Martin down over him and said something to him. I saw Martin get the pants from under the pillow. The money was in a little tobacco-sack. I mean to say that I saw only $250 in that pocket. I did not count it. I saw it after it was counted. I counted mine and my wife's. I do not know how much there was in the pocket altogether. I do not know how much there was left. I heard Uncle Winse say that Martin could have the balance. I don't know how much there was. I never saw it to count. All I saw was what was counted out. Uncle Winse did not have the money in hand at all. He had it under his head. Martin Bryan paid out the money. Babe and Uncle Jack were asked by Uncle Winse how much he owed them. The best I remember, he says to Bryan that 'the balance or rest is yours, and that will pay you for waiting on me.' That money was in greenbacks."

While the plaintiff in this case, the defendant in the former suit, did not pray for any affirmative relief or for further recovery,

it is clear, under the evidence and the pleadings in the former suit, that the distinct issue was made and litigated as to whether the defendant was entitled to the currency and gold for his services; and that necessarily involved the question as to whether or not the administrator's intestate had settled with the plaintiff in the instant case for his services. And when the jury returned in the former case a verdict in favor of the administrator for the amount of gold which was in the defendant's possession, and in favor of the defendant, the plaintiff in the present case, for the currency, it was the equivalent of finding that there had been a settlement between the administrator's intestate and the defendant in that case for the latter's services. While Bryan, the plaintiff in error, in his pleadings referred to the gold coin and the other moneys which he had in his possession and which came from the administrator's intestate as a gift, he also alleges that it was given him on account of his services. The expressions thus used in the pleadings, "gift" and "given him on account of his services," may create an ambiguity, but the pleader can not himself take advantage of this ambiguity. It is manifest from the pleadings and the evidence introduced on the former trial that the plaintiff in the present case submitted to the court and jury the contention that all the money which he had received from Bruce had been gotten by virtue of the latter's obligation to pay for the services rendered him. And the jury having found that a part of the money, that is, the part which was in gold coin, should be returned to Bruce's administrator, thus finding to that extent against the defendant, the plaintiff in the present suit, upon the issue made in the former suit as to whether that money had been delivered to him in payment for his services, he will not be permitted to set up his contention that the money which he had been permitted to hold by the former verdict of the jury was not in full payment of his claim for services. *Judgment affirmed. All the Justices concur.*