Argued March 27; affirmed May 22, 1945

# STATE *v.* GRALEWSKI'S ESTATE ET AL.

(159 P. (2d) 211)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*J. Mason Dillard,* of Portland (Carl C. Donaugh, of Portland, on the brief), for defendants and appellants Ida E. Welch, Paul Zielkie, and Frank Zielkie.

*Rex Kimmell,* Assistant Attorney General (George Neuner, Attorney General, on the brief), for plaintiff and respondent.

LUSK, J.

Prior to November 15, 1934, certain funds stood to the credit of John Gralewski and his wife Elizabeth, both deceased, in two joint savings accounts, one in The First National Bank of Portland (Oregon) and the other in The United States National Bank of Portland (Oregon). Elizabeth Gralewski died November 15, 1934, and John Gralewski thereupon, as survivor under the deposit agreements, withdrew the moneys and redeposited them in savings accounts in the same banks in the joint names of himself and his son Kurt. In April, 1939, John Gralewski was adjudged insane and committed to the Oregon State Hospital by the Circuit Court of Multnomah County, Probate Department. He there remained until his death on September 3, 1943, intestate and without heirs. No guardian of his person and estate was appointed until October 15, 1940.

The son Kurt predeceased him. On October 4, 1940, Kurt Gralewski, being in the hospital and gravely ill, gave written authorization to a cousin, Ida Elizabeth Welch, and an attorney to withdraw all the moneys in the two joint accounts and directions to redeposit them in his own name in the same banks. He also told them

where they could find the passbooks in the house formerly occupied by Kurt and his father. Mrs. Welch and the attorney got possession of the passbooks, and on October 5 withdrew and redeposited the moneys in accordance with these directions. On October 4, 1940, Kurt executed a will in which he named The First National Bank executor and three cousins, Ida Elizabeth Welch, Paul Zielkie and Frank Zielkie, the sole beneficiaries. He died October 9, 1940, and on October 11, 1940, his will was admitted to probate and The First National Bank appointed executor. At the time of his death there stood to his credit in The United States National Bank the sum of $4,771.93 and in The First National Bank the sum of $10,629.63, all the proceeds of the moneys formerly held in the joint accounts.

From the time of the opening of the accounts in the names of John and Kurt Gralewski until October 5, 1940, no withdrawals were made therefrom, and no further deposits except deposits of accrued interest made by the bank.

This proceeding was commenced by the state of Oregon through the State Land Board, claiming that the moneys on deposit in the two banks in the name of Kurt Gralewski were in fact the property of John Gralewski and that they escheated to the state on the latter's death. The state also seeks the escheat of a small sum of money and a life insurance policy payable to the estate of John Gralewski, in the possession of his guardian at the time of his death. These two matters are not here in controversy. The defendants named in the complaint were The First National Bank as the executor of the estate of John Gralewski and as guardian of the person and estate of John Gralewski, and The United States National Bank. The above named cousins of Kurt Gralewski, asserting title to the

deposits under his will, were permitted to intervene and file an answer. The circuit court entered a decree for the state, and the cousins have appealed. They will hereafter be referred to as the appellants.

The agreements pursuant to which the funds were deposited in the two banks to the joint accounts of John and Kurt Gralewski were, in substance and legal effect, identical with those considered in *Beach v. Holland,* 172 Or. 396, 142 P. (2d) 990, 149 A. L. R. 866, and *Holbrook v. Hendricks' Estate,* 175 Or. 159, 152 P. (2d) 573. By the First National Bank agreement it is provided that the moneys "shall be paid * * * to us, or either of us, or to the survivor of us"; by the United States National Bank agreement, that they "are payable to the undersigned or the survivor". In each instance the agreement was signed by John and Kurt Gralewski. There is no evidence to overcome the *prima facie* effect of the writings, and, under the doctrine of the cases cited, the codepositors became each vested with a joint and equal interest in the deposits with the right in the survivor to succeed to the full ownership of the balance in the accounts at the death of his cotenant. See, also, *Manning v. United States National Bank of Portland,* 174 Or. 118, 148 P. (2d) 255, 153 A. L. R. 922. John Gralewski survived his son, and the question for decision is whether, as the appellants contend, the act of his son, in withdrawing all the moneys and redepositing them to his own account while the father was insane and unable to give his consent was effective to terminate the joint tenancy, and the rights, including the survivorship right, of the father, and to vest sole title to the fund in Kurt Gralewski.

It is our opinion that to sustain the appellants' position would be to approve the unauthorized invasion by one of another's legal rights. The interests of John

and Kurt Gralewski in the funds were, as we have said, joint and equal, and the latter could not by his unilateral action divest his father of his interest.

In New York when a bank account is opened in the form prescribed by statute, that is, "in the name of such depositor and another person, in form to be paid to either or the survivor of them", a presumption at once arises that the interest of the depositors is that of joint tenants. Upon the death of one of the depositors this presumption becomes conclusive in favor of the survivor in respect of any moneys left in the account. It continues to be a mere presumption in respect to any moneys previously withdrawn. *Moskowitz v. Marrow,* 251 N. Y. 380, 167 N. E. 506, 66 A. L. R. 877; *Marrow v. Moskowitz,* 255 N. Y. 219, 174 N. E. 460.

In view of the nature of the rights of the joint depositors, the New York courts hold that where one of them withdraws all the money in the account and redeposits it to his own account without the consent of the other, the cotenancy is not thereby terminated and the interest of each depositor remains as it was when the funds stood to their joint account. *O'Connor v. Dunnigan,* 158 App. Div. 334, 143 N. Y. S. 373, is very close to this case on its facts. The joint depositors were husband and wife. Four days before her death the wife drew out all the money in the joint account and deposited it in the bank in her own name. The next day she made her will purporting to dispose of the money. In a controversy between the husband and his deceased wife's executrix over the ownership of the money the court decided in favor of the husband. In the opinion it was said:

"Her change of the moneys, however, from this account to another in her individual name, in the

absence of and as far as appears without the consent of Joseph Guilfoyle, could not divest Joseph Guilfoyle of his joint ownership in the property. It would be preposterous to claim that an appropriation of personal property by one joint owner to his personal use could divest the interest of the other joint owner or could in any way be presumed to have been by the consent of his co-owner. In order to change the joint ownership which presumptively existed, defendant was required to show that the ownership of Joseph Guilfoyle has been voluntarily surrendered. Of this there is no attempted proof.''

It was accordingly held that the husband was entitled to the moneys by right of survivorship. The judgment was affirmed by the Court of Appeals without opinion. 213 N. Y. 676. Other New York cases applying the same doctrine are *Marrow v. Moskowitz*, supra; *In re Klenk*, 165 App. Div. 917, 150 N. Y. S. 365; *In re Brogan's Estate*, 165 Misc. Rep. 111, 300 N. Y. S. 447. See, also, *In re McCarthy's Estate*, 164 Misc. Rep. 719, 299 N. Y. S. 715; *In re Sutter's Estate*, 138 Misc. Rep. 85, 245 N. Y. S. 636.

The New York rule is followed in Missouri: *Ambruster v. Ambruster*, 326 Mo. 51, 31 S. W. (2d) 28, 77 A. L. R. 782, and in California: *Wheeland v. Rodgers*, 20 Cal. (2d) 218, 124 P. (2d) 816; *Lieber v. Rigby*, 34 Cal. App. (2d) 582, 94 P. (2d) 49; *Wallace v. Riley*, 23 Cal. App. (2d) 669, 74 P. (2d) 800; *In re Estate of Harris*, 169 Cal. 725, 147 P. 967; *Waters v. Nevis*, 31 Cal. App. 511, 160 P. 1081. See, also, *Woodward v. Auyong*, 34 Haw. 597.

In *Siemianoski v. Union State Bank of South Chicago*, 242 Ill. App. 390, the court, in disposing of a

contention that a joint account had been revoked by the act of one of the depositors, said:

"In directing the defendant to revoke the joint account, Rydzynski was attempting to revoke the joint account altogether. If he had withdrawn the entire amount and deposited it in his own name, it could not fairly be presumed from that act that he intended to terminate the joint account altogether, as by the agreement creating the joint account either party could withdraw the entire amount in the account. The agreement, however, does not provide that the joint account may be terminated by a withdrawal of the whole amount. And in the absence of such an agreement, reasonably it will not be presumed that the joint account would be terminated by one of the parties withdrawing the whole amount; nor reasonably would it be presumed that the withdrawing of the whole amount by one party, as permitted by the agreement, would constitute an intent to terminate the joint account together. Such an act in the absence of an agreement would not *ipso facto* close the account. The account could remain open and further deposits could be made by either or both of the parties."

The Pennsylvania Supreme Court has announced the rule that one joint depositor will not be permitted to terminate the tenancy and exclude the other by drawing out all the money, and has enforced the right of the survivor to money so withdrawn. *Culhane's Estate,* 334 Pa. 124, 5 Atl. (2d) 377. Pennsylvania recognizes estates by the entirety in a bank account, and it is held that "where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn *is impressed with the entirety provision that it is the*

*property of both,* and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences. However, the bank, acting in good faith, is protected when funds are withdrawn by either." *Madden v. Gosztonyi,* 331 Pa. 476, 200 Atl. 624, 117 A. L. R. 904. To the same effect are *Werle v. Werle,* 332 Pa. 49, 1 Atl. (2d) 244, and *Berhalter v. Berhalter,* 315 Pa. 225, 173 Atl. 172.

Several cases have arisen in New Jersey involving joint bank accounts between husband and wife. In *Steinmetz v. Steinmetz,* 130 N. J. Eq. 176, 21 Atl. (2d) 743, it appeared that while the husband was mentally incompetent the wife drew out all the money in two joint accounts in the names of herself and her husband, and with such money opened two new accounts in the names of herself and another (who, however, had no interest therein). The husband died first, and, in an action by his administrator against the wife to recover one-half of the moneys withdrawn, the court said that the wife "took advantage of her husband's disability and seized the entire joint funds in an inequitable attempt to deprive him of all interest and rights therein", and that "the joint accounts no longer existed and she made herself a tenant in common of the joint funds to the extent of her one-half interest therein and she held the half share of her co-tenant as agent or trustee for him." See to the same effect, *Goc v. Goc,* 134 N. J. Eq. 61, 33 Atl. (2d) 870, and *Stout v. Sutphen,* 132 N. J. Eq. 583, 29 Atl. (2d) 724.

In the somewhat similar case of *Milan v. Boucher,* 285 Mass. 590, 189 N. E. 576, the act of the wife in causing the moneys in two savings accounts, held jointly with her husband, to be transferred from their names to the names of trustees for her in the same banks

was said not to be a withdrawal of the moneys but "assignments of the deposits", the result of which was to sever the joint ownership of the original depositors "and to transfer only her interest in the property to the trustees as assignees." The contracts of deposit in that case, however, contained a provision which the court interpreted to mean "that the deposits might be terminated by the action of either the husband or the wife alone while both were living."

No case has been cited in the briefs, and our research has discovered none, which sustains the right of one joint depositor to appropriate to himself the entire balance of the account in circumstances such as are here presented. None of our prior decisions touches the question. In *Beach v. Holland,* supra, and *In re Edwards' Estate,* 140 Or. 431, 14 P. (2d) 274, there was no controversy about moneys withdrawn during the joint lives of the depositors. In each of these cases the question was as to the right of the survivor to the balance remaining in the account. In *Holbrook v. Hendricks' Estate,* supra, the survivor sued to recover moneys withdrawn from time to time from the joint account by her deceased codepositor, and we held that, under the evidence, the account was opened with moneys of the survivor solely as a matter of convenience and without an intent to vest an interest in the deceased. The administrator of the latter was therefore required to account for the moneys withdrawn. The question whether a joint depositor who is also a joint owner can acquire sole title to the moneys in the deposit by withdrawing the entire amount was not involved.

■■ We do not stop to consider whether there are grounds for distinguishing this case from the Massa-

chusetts and New Jersey decisions to which attention has been called. We think that the rule announced in New York, and followed in some of the other states, is consonant with justice and principles of fair dealing, and will serve to protect the legitimate property interests of the parties to joint bank accounts. Although we have spoken of those interests as those of joint tenants, it is obvious that a joint bank account does not have all the incidents of a joint tenancy at common law. "But it likens itself to a joint tenancy, for the transaction of a joint deposit such as that with which we are here concerned creates a joint ownership with the right of survivorship": *Beach v. Holland,* supra, 172 Or. at p. 417. Cf. *Erickson v. Erickson,* 167 Or. 1, 16, 115 P. (2d) 172. That right is its "grand incident", and in our opinion the withdrawal by one depositor, without the other's consent, of the entire deposit, and for the manifest purpose of defeating his codepositor's survivorship right, is a violation of the understanding between the parties, as evidenced by the deposit agreement, and an attempted invasion of such codepositor's title. It does not effect a severance of the joint tenancy, but, as the authorities upon which we rely hold, results only in a change in the form of the deposit, while its joint character and the rights therein of the respective parties remain unaltered. It follows that in the present case, upon the death of Kurt Gralewski, John Gralewski. as the survivor, succeeded to full ownership of the moneys in the two deposits in question.

■ The appellants contend that certain evidence offered by them was erroneously excluded by the court. They offered to prove the existence of affectionate relations between John and Kurt Gralewski and the appellants, and that John Gralewski, in the year 1910.

attempted to make a will in which he named the father of the appellants as an alternate beneficiary. They argue that this evidence tends to show that the appellants were "the natural objects of the testamentary bounty of both" John and Kurt Gralewski, and that it is admissible under the Beach, Holbrook and Manning cases. In the Beach and Holbrook cases we held that the parol of evidence rule does not bar the reception of evidence bearing on the question of donative intent where a joint bank account is opened under a form of deposit agreement similar to those with which we are here dealing. The opinion in the Manning case contains a discussion of that question in relation to certificates of stock issued jointly to two persons, but leaves it undetermined. In the instant case, however, it was necessary for the appellants, if they were to prevail, to show that John Gralewski had authorized his son Kurt to withdraw the moneys in the joint accounts in order that he might bequeath them by will to his cousins, and we are of the opinion that on that question the evidence relied upon falls far short of relevancy. Instead of tending to prove such an authorization, it merely leaves us to conjecture that, had John Gralewski been competent instead of insane, he might, in the circumstances that developed, have given Kurt Gralewski the authority which in fact he was incapable of giving.

■ Since it is undisputed that John Gralewski died intestate and without heirs, it follows that the moneys in controversy escheated to the state of Oregon, and the decree of the court below is, therefore, affirmed.