Argued May 4, affirmed as modified July 12, petition for
rehearing denied September 5, 1961

# MOWREY *v.* JARVY

363 P. 2d 733

*G. A. Heikkila,* Portland, argued the caused and filed a brief for appellants.

*George G. Van Natta,* St. Helens, argued the cause for respondent. With him on the brief was John L. Foote, St. Helens.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

GOODWIN, J.

The defendant appeals from a decree impressing a trust upon $6,876.38 in his hands and awarding the fund to the plaintiff.

Before considering the merits of the controversy, it is necessary to consider certain procedural difficulties the parties have created by their pleadings. The plaintiff is the personal representative and heir of one Guy Lillich, deceased. Both Guy Lillich and the defendant Jarvy were surviving depositors of joint checking accounts with Daisy Randall, deceased. Daisy Randall was Guy Lillich's sister, and the defendant's mother. Jarvy is also Daisy Randall's heir and personal representative.

The complaint begins as a complaint in an action at law for money had and received. After the plaintiff introduces her subject as a cause of action, she describes herself as the executrix of Guy Lillich, deceased, and the defendant as one who has come into the possession of $7,076.38 which, at the time of Guy Lillich's death, she says belonged to her decedent. The plaintiff alleges sundry matters which might give rise either to an action upon a common count for money or to a suit to impress a constructive trust. Near the end of the pleading it becomes apparent that the plaintiff is thinking about a suit in equity, and she closes with a prayer for a decree that the defendant pay over money to her. The plaintiff did not allege the inadequacy of a remedy at law, or pray for general equitable relief.

██ Without advising the court of his specific grounds, the defendant demurred to the complaint on the statutory ground that the complaint did not state a cause of action. Such a demurrer was not sufficient to challenge the complaint for want of equity. *Barnes v. Eastern & Western Lbr. Co.*, 205 Or 553, 613, 287 P2d 929. The trial court evidently construed the complaint as one stating a cause of suit. The court could do so under ORS 16.120, the rule of liberal construction, and ORS 16.460 (3), the rule that no cause shall be dismissed for having been brought on the wrong side of the court. When the demurrer was filed, the suit did not run afoul of the nonclaim statute, ORS 121.090, because the assets sought to be impressed with a trust were in the hands of the defendant in his own right, so far as the record showed.

None of these facts appeared in the pleadings of either party, but while the dispute was in the hands of attorneys, and before the summons was served in this suit, the defendant deposited in a new bank account all the money which he had received by survivorship from a joint checking account with his mother. The new account was in the name of "Estate of Daisy Randall, deceased." Under the rule announced in *Trumbo v. Trumbo et al*, 208 Or 114, 299 P2d 609, the plaintiff in the instant case no doubt would have been required to pursue her remedy under ORS 121.090, 116.525 and 116.530 if the money had been in the estate of Daisy Randall or owed to the estate when the administrator was appointed. But in the case at bar, the plaintiff sued the defendant as a private individual into whose hands money claimed by the plaintiff had fallen by operation of the incidents of a private banking arrangement, and not by operation of the law of decedents' estates.

The evidence at the trial shows that the defendant voluntarily transferred his own funds to the bank account of the estate after the dispute arose. Formal, written demand was made upon the defendant Jarvy for the return of the money and this suit was commenced after Jarvy had transferred the money to the estate account. When Jarvy filed his answer to the complaint, however, he merely made a general denial and the case went to trial on the issues thus made up. There was nothing about the case during the pleading stage to put the plaintiff on notice that she might have a claim against an estate, or even that assets in which she was interested had been transferred to an estate.

A notice to creditors had been published, an inventory filed, and other documents in the estate might be said to have constituted notice that the estate included funds equal to, or in excess of, those claimed by the plaintiff. But nothing done by the defendant with money previously vested in him by operation of the banking relationship appears in the pleadings in this suit prior to trial to oust the circuit court of its primary jurisdiction to entertain the suit. A motion to make the complaint more definite and certain, which might have been useful, was not employed. There was no error in overruling the demurrer.

■ The defendant next assigns error to an order of the court which added the defendant Lorrin Jarvy, administrator of the estate of Daisy Randall, as a party defendant. Jarvy, as we have noted, was previously named in his individual capacity as the only defendant in the case. The defendant has devoted most of his brief and argument to the supposed error in bringing in the personal representative as a party defendant. However, the defendant has failed to

demonstrate how such a ruling could have prejudiced him in any way. We hold that the joining of the personal representative in his official capacity was well within the trial court's discretion under ORS 13.110, if, indeed, not mandatory under the circumstances disclosed by the defendant's plea in abatement when it finally appeared in the record.

In *Beers v. Beers, Administratrix,* 204 Or 636, 283 P2d 666, this court held that the individual widow must be added as a party defendant even though as personal representative she was the named defendant in a controversy between survivors of a deceased owner of real property. In the *Beers* case, the defect of parties was fatal even when raised for the first time upon appeal. It is therefore understandable that the trial court ordered the personal representative added as a party in this case. The trial court expressed the view that all related matters should be disposed of in one suit without the necessity of having the cause sent back for another trial. This is a correct application of ORS 13.110. The assignment of error has no merit.

The defendant finally contends that the case at bar should have been abated in the circuit court. Midway through the trial, the defendant filed an amended answer alleging that the county probate court had jurisdiction of the same claim. This assignment of error is barren of merit for several reasons. First, it did not appear from the plea that the claims were necessarily the same. Further, even if a timely plea in abatement would have been well taken, which we do not now decide, the defendant waived the plea by filing a general denial and proceeding to trial on the merits. *Lewis v. Miller,* 197 Or 354, 251 P2d 876, and authorities cited therein. If the equity proceedings

were subject to abatement under ORS 121.090 the plea alleged no facts which would require the circuit court to allow it. At most, the plea merely alleged an effort by the plaintiff to pursue assets into the probate court after she learned that the defendant had attempted to choose a battleground there. Nothing in the plea required the plaintiff to disengage the defendant in the circuit court. It is well settled that a plea in abatement must be disregarded unless it is definite, certain, complete in itself, and demands a judgment of abatement. *Walker v. Hewitt,* 109 Or 366, 220 P 147, 35 ALR 100; *Credit Service Co. v. Finne,* 162 Or 466, 90 P2d 743; *Kuntz v. Emerson Hardwood Co.,* 93 Or 565, 184 P 253. The tendered plea was defective on all four counts and there was no error in disregarding it.

Turning then to the merits of the controversy, we find this factual situation: Guy Lillich was 81 and his sister, Daisy Randall, was 76 during the summer of 1959. They had been living together for some seven years. During all this time they shared everything in common, and sustained themselves with Guy's pension check of $56.60 and Daisy's social security each month. Guy and Daisy had some $15,000 in cash in three joint bank accounts. There is no controversy about the amounts and sources of the money. Most of the money represented Guy's life-time accumulation. Some small part of the funds may have come from savings out of their monthly checks brought about by the thrift and management of Daisy. For seven years Daisy had been Guy's sole companion, cook, caretaker, nurse, and housekeeper. She neither asked nor received payment. The two were mutually dependent upon one another for support and company, even though each had other relatives.

During the year preceding his death, Guy was bed-fast, incontinent of bladder and bowels, and unable to feed himself. Daisy cared for him day and night. Two or three times a day she washed his soiled bedding in a 30-year-old wash machine to which she carried water in buckets. She turned him over in bed, bathed and shaved him, and attended to all his needs. The evidence revealed that Guy may have suffered a cerebral vascular accident in May, 1958, and that his physical condition had steadily worsened from that date forward.

■ Guy's mental condition was the subject of much of the testimony in the record, but was never shown to be significantly different from that of any other person of his age and physical condition. For perhaps 15 to 17 years he had suffered from a progressive Parkinson's syndrome. The various medical witnesses noticed nothing remarkable. They generally agreed that Guy's recent medical history suggested a possible decline of judgment. No witness who had seen him said he was incompetent, although medical experts disagreed on hypothetical questions. Lay witnesses tended to agree that he was bright and alert almost to the last, but that he experienced difficulty in talking after his possible stroke in May, 1958. He was, of course, physically helpless at all times during the last year of his life. Physical debility does not necessarily equal mental incapacity. *McCaslin v. Mummery,* 222 Or 599, 352 P2d 1111.

Daisy, whose general health had been good until about June 1, 1959, at that time found herself ailing and saw her physician. Following medical consultation, she apparently talked to Guy about the future, but no witness to that conversation survives. On June 1, Guy was placed in a nursing home under an

agreement which required the payment of $200 per month. The record shows that Daisy went to a bank in which she and Guy kept two of their joint accounts and told the banker that she would need to transfer some money into another account. She told the banker that Guy was not physically able to make payments by check and that she would be in the hospital undergoing surgery. Daisy said she wanted to arrange to take care of the bills for herself and Guy which might come due while she was incapacitated. Daisy's separate income during this period did not exceed $50 per month, and her total reserves, apart from the Lillich-Randall accounts, were less than $2,000.

The banker told Daisy she could withdraw the funds herself, but she declined to do so, saying she would rather have Guy sign the checks. On June 4, 1959, Daisy returned with the checks, signed by Guy, and deposited the balances of two accounts, amounting to some $7,076.38, in a checking account which she was then maintaining with her son, the defendant in this case. She told the banker her reason for making this change in the checking accounts was to make it possible for her son to take care of all bills in connection with her own forthcoming hospitalization and with Guy's care in the nursing home. The above-described transaction closed out all the Lillich-Randall checking accounts. The savings account of $7,000, also held jointly, was untouched and is not involved in this suit. She drew a check for $200 to pay the first month's bill for Guy's nursing home care. The joint funds from the Lillich-Randall account in her possession now amounted to $6,876.38. The total of the Randall-Jarvy account exceeded this sum by $1,589.34 at the time this suit was filed.

On or about June 8, 1959, Daisy went to the hos-

pital, and on June 16, 1959, she died. Guy was being cared for in the rest home, under arrangements made by Daisy, when he learned of his sister's death. Guy steadily failed in health thereafter, and died on August 16, 1959, leaving a will under which the plaintiff was appointed executrix.

There was no evidence that fraud, undue influence, or overreaching of any kind was practiced upon Guy by Daisy. Under the circumstances, any inference of misconduct would be inconsistent with the kind of life these two devoted siblings shared during their declining years. The trial court found to this effect in its memorandum opinion.

■ It is clear that the contractual relationship between Guy and Daisy as joint depositors and the respective banks as depositories created survivorship checking accounts and that all the funds would have belonged to Guy outright upon Daisy's death if Daisy had not first withdrawn the $7,076.38. *Langoe, Adm'r v. Giannini,* 186 Or 207, 206 P2d 106; *Beach v. Holland,* 172 Or 396, 142 P2d 990, 149 ALR 866; *In re Edwards' Estate,* 140 Or 431, 14 P2d 274. All parties so concede.

■ It is equally clear that either party had the right during the lifetime of both parties to make such use of the joint checking accounts as was consistent with joint ownership. Unauthorized dealings of the kind described in *Nusshold v. Kruschke,* 176 Or 697, 159 P2d 819, are inconsistent with the relationship of joint owners. In that case, the husband withdrew a substantial sum from a joint checking account held with his wife. He thereupon turned the funds over to another person in contemplation of death. Such unilateral action was set aside by a court of equity. See, also, *State v. Gralewski's Estate et al.,* 176 Or 448, 159

P2d 211, 161 ALR 66. The Annotation, 161 ALR at 71, collects cases elsewhere to like effect. Since the withdrawal of the funds by Daisy was accomplished with the express consent of Guy, the rule of the *Gralewski* and *Kruschke* cases does not solve the problem.

The question now before the court is whether Daisy's withdrawal of the funds from the Lillich-Randall accounts accomplished any change in the beneficial ownership thereof. If there was a gift *inter vivos*, it terminated the joint ownership of the funds. If such were the case, Daisy could have created a new joint ownership in the Randall-Jarvy account with all the contractual incidents thereof. Further, if Guy's role in the transaction was that of a donor, as contended by the defendant, then it would be immaterial whether Daisy put the money into a joint account with her son or took the money out and spent it. However, the evidence fails to establish a donative intent. *Unterkircher v. Unterkircher*, 183 Or 583, 591, 195 P2d 178.

While it is true that there was some circumstantial evidence which was consistent with the theory that the withdrawal of the two accounts with Guy's consent was a gift from Guy to Daisy, her own description of the transaction as recounted by the banker proves that something else was intended. If there was a gift *causa mortis*, then of course the event of Daisy's death prior to that of Guy defeated the gift. *Allen v. Hendrick*, 104 Or 202, 219, 206 P 733.

The most logical explanation, not only on the basis of the banker's testimony, but on the basis of all the evidence in the case, was that Guy intended for Daisy to put the money into an account where it could be disbursed conveniently for their mutual benefit. The parties intended that their mutual interest in the funds

remain substantially unchanged, but that Daisy would manage the fund. Such an arrangement would be an expressed trust. See *Allen v. Hendrick,* supra, 104 Or at 222, 223.

Daisy knew she would be incurring hospital expenses, and in fact did incur substantial expenses. She also knew that Guy would need at least $200 each month for an indeterminate period until her health would permit her to take him home again. Her son was the only person available to write the necessary checks. It is scarcely to be doubted that Guy and Daisy discussed these matters and that he concurred in her plan to establish the fund as she subsequently did.

There was no competent evidence to show that Guy lacked mental capacity to consent to the transfer of joint funds by Daisy. On the contrary, there was evidence that Guy was sufficiently competent to make a valid will after his stroke in May, 1958, if indeed that was the nature of his difficulty at that time. There is no evidence to rebut the presumption that his mental condition continued to be as good in 1959 as it had been in June of 1958 when he made his will. *McCaslin v. Mummery,* supra.

The plaintiff tried the case on the theory that the conduct of Daisy was without the consent of Guy, in that he was incompetent to give his consent. In such a case, the joint ownership in the funds also would have continued after Daisy had withdrawn them. *State v. Gralewski's Estate et al.,* 176 Or 448, supra. But the plaintiff's contention that there is a constructive trust to be enforced here by the conscience of equity is not supported by the facts. See Bogert, Trusts (Hornbrook, 3d ed, 1953) 329. The evidence rather establishes that a trust was intended and ex-

pressed between the parties. Since proof of the intent to create a trust can not be demonstrated from expressions, but must be inferred from conduct, it is more accurately characterized as an express trust proven by circumstantial evidence. Bogert, Trusts, supra at 302.

When Daisy withdrew the funds from the Lillich-Randall account, the funds shortly would have been beyond the immediate reach of either owner because of the physical infirmity on Guy's part and because of Daisy's own impending hospitalization. She expressed the desire of both owners to put the funds in an account where they could be drawn upon for exactly the same purposes for which they were formerly available in the Lillich-Randall account. The defendant now vigorously disputes this construction of the transaction, but Daisy's own explanation of it to the banker refutes any other interpretation.

█ If it was the intent of the parties to continue their same interest in the fund, but merley to change the method of drawing checks, as a matter of convenience, then of course the incidents of joint ownership which existed in the Lillich-Randall account would follow and be enforceable in Daisy's hands no matter where she put the money. Jarvy admittedly had no interest in the Randall-Jarvy account to the extent that it was augmented by the transfer. His present interest in the fund is the result of his mother's death, and can rise no higher than her *inter vivos* rights. It is his mother's interest in the fund during her lifetime with which we are concerned.

Daisy, while she lived, was a trustee as well as one of the two beneficiaries of the trust created by the withdrawal of the funds from one account and their deposit in another. If Guy had died first, Daisy

would have been obliged as trustee to pay all of her brother's debts which would ordinarily have been payable out of the old joint account. Since the transfer of the funds for the purposes indicated did not destroy the survivorship features of the original fund, Daisy in that event would have taken the balance in her own right by virtue of the original survivorship agreement. However, as fate would have it, Daisy died first. The funds in her possession on the date of her death retained their original character as joint property, temporarily held in her sole control as trustee, but with the original incidents of survivorship intact. The beneficial interest in the fund thereupon survived to Guy, subject again to the obligation of the survivor to pay the debts of Daisy which ordinarily would have been payable from the joint fund under the terms of the agreement of Guy and Daisy.

The trial court allowed the survivorship feature of the original account to carry the entire fund as of the date of Daisy's death into the estate of Guy. We believe that the trust established between the original owners of the fund was mutual and that the funds in Daisy's control, while beneficially the property of her surviving brother Guy, were chargeable with the debts incurred in connection with her last illness and burial. It was obvious from the record that each of the parties intended to provide for the incidental expenses of the other upon the death of the first to die.

In view of the fact that Daisy was entitled to her expenses from the joint account, it is fitting that her estate be credited with the bills previously paid. The record contains sufficient detail for the trial court to enter a modified decree without taking further evidence. In the interest of disposing of all issues between the parties in the case at bar, the trial court

should modify its decree in favor of the plaintiff by allowing the defendant credit for the last illness and burial expenses shown in record.

Affirmed as modified; neither party to recover costs.